GEORGE W. SAVAGE, receiver of "The New Jersey Franklinite Company," *vs.* ASHLEY H. BALL and others.

1. Where A. has given his note to B., at the instance, and for the benefit of C., and in consideration thereof C. has given his note to A., an injunction will not lie to restrain proceedings at law by A. upon C's note, on the ground that A's note to B. has never been paid.

2. Promissory notes exchanged between parties, constitute the one a good consideration for the other.

3. The act of an officer *de facto* is good, wherever it concerns a third per-

son who had a previous right to the act, or had paid a valuable consideration for it.

4. The New Jersey Franklinite Company agreed with the firm of Ball & Company, that if the latter would contract to build a certain railroad, upon the basis of a stock subscription, and would subscribe for $200,000 worth of the stock of the railroad company for that purpose, they, the Franklinite Company, would convey as many shares of the stock as should be agreed upon by their president and Ball & Company, subject to the approval of the directors. Ball & Company subsequently entered into the contract, and subscribed for $200,000 worth of the stock of the railroad company. The president of the Franklinite Company thereupon agreed to transfer 8000 shares of the stock of that company to Ball & Company. The action of the president was approved by the directors, and the stock transferred. The resolution of the directors was subsequently approved by the stockholders. *Held,* that even if the road was never built, and the stock never paid for, and admitting that the Franklinite Company are entitled in equity to a return of their stock, it does not in any wise impair the fairness or validity of the issue of the stock, or the legality of the election of directors chosen by votes given upon the stock thus issued.

5. The mere fact of the insolvency of a company does not of itself, render invalid or fraudulent a note given for a *bona fide* debt.

----

This bill was filed to enjoin proceedings at law upon a promissory note for $5000, purporting to have been given by "The Consolidated Franklinite Company of New Jersey," to A. H. Ball & Company, on the 26th of April, 1861. The injunction issued, pursuant to the prayer of the bill, on the 12th of December, 1863. The defendants, having answered, now move to dissolve the injunction, on the ground that the equity of the bill is fully denied by the answer.

*Mr. Ranney,* for defendants, in support of the motion.

*Mr. B. Williamson,* for complainant, contra.

THE CHANCELLOR. The grounds upon which the injunction was prayed for and allowed were, that the note was without consideration, and that it was obtained by fraud.

The charges of the bill are explicitly denied by the answer, and the real consideration of the note is set forth. It is averred that one Samuel F. Headley held in his hands stock

of the corporation to the amount of $260,000, and that Ball & Company, at the instance of the corporation, procured the transfer of the stock to the corporation, through one Henry Van Renssalear, for $5000, which sum was paid by Van Renssalear to Headley in cash, and by Ball & Company to Van Renssalear, in the notes of the said Ball & Company. It is objected to this statement of the consideration, that there is no averment that the notes to Van Renssalear were ever paid, or that Ball & Company have ever advanced one dollar on account of them. The notes of Ball & Company were given to Van Renssalear, who advanced the $5000 in cash, at the instance and for the benefit of the company. Whether, therefore, the notes of Ball & Company are paid or not, is a matter with which the company have no concern. They have received full value for their note, and the loss by Van Renssalear can constitute no defence to an action upon the note of the company. There was a good and valid consideration for the note at the time it was given. Even if the notes of Ball & Company had been given directly to the corporation in exchange for its note, it would have been a sufficient consideration. The one promise is a good consideration for the other. *Gilbert* v. *Duncan*, 5 *Dutcher* 145, 529; *Cameron* v. *Chappell*, 24 *Wend.* 94; *Dowe* v. *Schutt*, 2 *Denio* 621; *Davis* v. *McCready*, 17 *New York R.* 232.

The bill further charges that the directors of the company, by whom the note was authorized to be executed, were not legally elected, and were not qualified to act as directors for various reasons, and among others, because at the time of their election they were not stockholders of the company. And it is urged that the charge of their not being stockholders is not explicitly denied by the answer. I think the answer, in connection with the affidavit of one of the defendants, does contain a full denial of the charge. But if it be admitted that the answer upon this point is not satisfactory, and that the directors were neither duly qualified, nor legally elected, it will not affect the validity of the note. It is admitted that the directors, by whom the note was authorized

to be made, were by color of election, directors *de facto*. The act of an officer *de facto* is good, wherever it concerns a third person who had a previous right to the act, or had paid a valuable consideration for it.    *Riddle* v. *County of Bedford,* 7 *Serg. & R.* 392; *Angell & Ames on Corp.*, § 287.

The bill further charges, that the stock which was voted upon at the election for directors, and by virtue of which the directors were elected, was issued fraudulently and without consideration to Ball & Company, and that therefore the election was null and void.

This charge of fraud is denied, in express terms, by the answer, and the consideration for the issue of the stock is set out specifically at length.    The substance of the answer upon this point is : That the Sussex and Warren Railroad Company proposed to construct their road upon the basis of a stock subscription.    That thereupon the Franklinite Company, who were interested in the construction of the road, applied to Ball & Company, who were railroad contractors, to build the road upon the basis of a stock subscription.    It was thereupon agreed by the directors of the Franklinite Company, that if Ball & Company would contract to build the road upon the basis of the stock subscription, and would subscribe for $200,000 worth of the stock of the railroad company for that purpose, the Franklinite Company would convey as many shares of the stock as should be agreed upon by the president and Ball & Company, subject to the approval of the directors.    That Ball & Company having subsequently entered into the contract with the railroad company to build the road, and having subscribed for $200,-000 worth of the stock of that company, the president of the Franklinite Company agreed to transfer 8000 shares of the stock of that company to Ball & Company.    That the directors of the Franklinite Company subsequently approved the action of the president, and the stock was transferred accordingly.    And that at a meeting of the stockholders subsequently held, the resolution of the directors was approved by the stockholders.

It is unnecessary to express any opinion in regard to the character or operation of this contract, further than as it may affect the validity of the issue of the stock of the Franklinite Company to Ball & Company. The allegation of the defendants in answer to the charge that the stock was issued without consideration is, that it was issued in consideration of an engagement by Ball & Company to construct a railroad at the instance of the Franklinite Company, and a subscription for that purpose by Ball & Company for $200,000 worth of the stock of the railroad company. Assuming that the railroad was never built, and the stock consequently never paid for, admitting that the Franklinite Company are entitled in equity to a return of their stock, it does not, in any wise, impair the fairness or validity of the issue of the stock, or the legality of the election of directors, chosen by votes given upon the stock thus issued.

But there is another answer to this part of the case, viz: that every vote cast at the election was for the same directors, and that if the stock issued to Ball & Company had not been voted upon, the result of the election would have been in no wise altered.

A further exception is taken to the sufficiency of the answer as a ground for dissolving the injunction, because its denial of the insolvency of the company at the time charged in the declaration, is not sufficiently specific and unequivocal. The bill charges that the consolidated Franklinite Company became insolvent and unable to pay its debts, prior to the first of August, 1861. And the defendants are interrogated, whether the said company was not insolvent on and before the first of August, 1861, and whether it has not continued insolvent since that time, and whether the said company has not been declared insolvent by the Court of Chancery of this state. The note in question bears date on the 26th of April, 1861, and matured prior to the first of August. The bill to have the company declared insolvent was exhibited in this court, and an injunction restraining the further exercise by the company of its corporate powers was issued, on the 6th of

February, 1863, eighteen months after the maturity of the note.

It is worthy of notice that the bill does not charge that the company was insolvent when the note was given, or that it was made to defraud the creditors of the company, or to gain any undue advantage in the distribution of its assets. The facts of the case negative any such idea. The sole ground of relief is that the note was fraudulent and without consideration, and made with the fraudulent intent of clandestinely selling the property of the company, and buying it themselves, without consideration, in fraud of creditors and the stockholders of the company.

All that is charged is, that the company was insolvent and so continued from and after the 1st of August, 1861, the day on which the suit upon the note is alleged to have been instituted. But that constitutes no ground of relief. The mere fact that the company was insolvent does not, of itself, render invalid or fraudulent a note given, or judgment confessed by them, for a *bona fide* debt. For eighteen months afterwards, neither the creditors nor stockholders of the company took any measures to have the company declared insolvent, or to obtain the interference of this court. If, in the mean time, the holders of the note have by their proceedings at law, acquired a lien upon the property of the company and a priority over other creditors in the distribution of its assets, there is no good ground for disturbing such priority. If they have not acquired such lien, their proceeding to final judgment at law will affect no equitable right of other creditors, if such there be.

The injunction is dissolved.